Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 414 | DATE | September 25, 2002 |
| CASE TITLE | Diamond v. Porsche Cars North America, Inc. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Porsche's Rule 12(b)(6) Motion to Dismiss

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Porsche's motion to dismiss Counts I, II and III for failure to state a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (doc. #6-1) is **GRANTED**. Accordingly, the Court **dismisses** Counts I, II, and III of the complaint for lack of jurisdiction, and **remands** Count IV arising under the Illinois New Vehicle Buyer Protection Act, 815 ILCS 380/1, *et seq.* to the Circuit Court of Cook County, Illinois. All pending dates and motions are terminated as moot. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 2 6 2002 | |
| ✓ | Docketing to mail notices. | | date docketed | 24 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED
SEP 2 6 2002

JACQUELINE DIAMOND and )
CHRIS DIAMOND, )
       Plaintiffs, )
) NO. 02 C 414
v. )
) JUDGE WILLIAM J. HIBBLER
PORSCHE CARS NORTH AMERICA, INC., )
)
       Defendant. )

## MEMORANDUM OPINION AND ORDER

In March 2001, Jacqueline and Chris Diamond ("Plaintiffs") leased a new Porsche Carrera automobile ("Carrera") manufactured by Defendant Porsche Cars North America, Inc. ("Porsche"). Plaintiffs claim the Carrera has various defects and nonconformities which Porsche has been unable to repair after several attempts. Consequently, they filed this four-count Complaint against Porsche, alleging violations of the Magnuson-Moss Warranty Act (the "Warranty Act"), 15 U.S.C. § 2301, *et seq.* (Counts I-III) and the Illinois New Vehicle Buyer Protection Act ("Illinois Lemon Law"), 815 ILCS 380/1, *et seq.*(Count IV). Porsche now moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), contending, *inter alia*, the Act does not apply to lease transactions. For the following reasons, the Court **grants** Porsche's motion to dismiss.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) should test the sufficiency of the complaint rather than address the merits of the case. *See Tibor Machine Prods, Inc. v. Freudenberg-Nok Gen. P'ship*, 967 F. Supp. 1006, 1011 (N.D. Ill. 1997). The Court must construe all allegations in the complaint in a light most favorable to the plaintiff, taking all well-pleaded facts and allegations as true. *Bontkowski v. First Nat. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). A defendant seeking dismissal for failure to state a claim, therefore, must meet a high standard in order to obtain such relief. Indeed, dismissal is not warranted

24

"unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957). *See also Albeiro v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997); *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1219 (7th Cir.1994). The Court must construe the present pleadings liberally in compliance with the notice pleading provision of the federal rules, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160 (1993), but need not stretch the allegations beyond their sensible and reasonable implications, *Chan v. City of Chicago*, 777 F. Supp. 1437, 1440 (N.D. Ill. 1991).

## STATEMENT OF FACTS

Plaintiffs allege the following facts in their Complaint. Pursuant to a written agreement dated March 24, 2001, they leased the Carrera from Porsche Financial Services ("PFS").[1] According to the lease, a copy of which is attached to the Complaint, Plaintiffs will pay PFS 38 monthly payments of $1173.10, for a total, including fees, of $46,243.90. At lease end, Plaintiffs can purchase the Carrera for $49,576.90. The gross capitalized cost of the Carrera, meaning its value plus other costs associated with the lease, equals $75,986.14.

Prior to or contemporaneous with the lease transaction, PFS purchased the Carrera in exchange for valuable consideration from Westmont Porsche ("Westmont"), an authorized Porsche dealer, for the purpose of leasing the Carrera to Plaintiffs. In connection with the purchase, Porsche issued to PFS several written warranties on the Carrera, including a 4 year or 50,000 mile bumper-to-bumper warranty, which PFS then assigned to Plaintiffs per the lease agreement.

Shortly after Plaintiffs took possession of the Carrera, they experienced engine and electrical defects that "substantially impair[ed] the use, value, and/or safety of the Carrera." (Comp. ¶¶ 12, 18.)

---

[1]The lease also lists Plaintiffs' business, Omega Marketing Network, Inc., as a lessee.

Plaintiffs requested on numerous occasions that Porsche repair the Carrera in accordance with its written warranty, and Porsche, through its authorized dealerships, attempted to do so but ultimately failed to cure the Carrera's defects. Finally, Plaintiffs attempted to revoke acceptance of the Carrera, but Porsche has refused to recognize the revocation and offered them no other remedy. The Carrera remains defective.

Plaintiffs initially filed their complaint against Porsche in the Circuit Court of Cook County in November 2001, asserting breach of written warranty (Count I), breach of implied warranty (Count II) and revocation of acceptance (Count III), all arising under the federal Warranty Act. Count IV is the only state law claim. In January 2002, Porsche removed the case to federal court, and a month later, filed this motion to dismiss contending, based on a recent decision by New York's highest state court, that the Warranty Act affords no protection to lessees like Plaintiffs. In response, Plaintiffs argue the Warranty Act is not limited to sales transactions only, and thus when the plain statutory language is considered, it is clear they constitute "consumers" who are entitled to enforce the warranty protections provided for by the Act.

## ANALYSIS

The Warranty Act allows a "consumer" to sue a warrantor for damages and other relief when the warrantor fails to meet obligations under the Act, a written warranty, or an implied warranty. 15 U.S.C § 2310(d)(1). Individual consumers may either sue warrantors in a state court of competent jurisdiction or in a federal district court if more than $50,000 is in controversy. *Id.*; 15 U.S.C. § 2310(d)(3).[2] The Act recognizes just three classes of individuals that may bring such a suit:

---

[2]According to the lease, the gross capitalized cost of the Carrera is over $75,000. However, the value of the Carrera at lease end amounts to only $49,576.90. Nowhere in Plaintiffs' Amended Complaint, filed after this case had been removed to federal court, do they assert that the $50,000 jurisdictional minimum of the Warranty Act has been met. Nor do they discuss, in responding to the motion to dismiss their Warranty Act claims, how the jurisdictional amount should be calculated. *See Marchionna v. Ford Motor Co.*, No. 94-C275, 1995 WL 549124 (N.D. Ill. Sept. 8, 1995). Thus, it is not apparent that Plaintiffs can satisfy even the threshold requirement for bringing a Warranty Act claim. Nevertheless, because the Court ultimately concludes Plaintiffs' Warranty Act claims are not cognizable, it will assume for the sake of argument that the amount in controversy exceeds $50,000.

> [t]he term "consumer" means a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).

15 U.S.C. § 2301(3). Thus in order to grant Porsche's motion to dismiss the Warranty Act counts, this Court must find the facts alleged in the Complaint fail to establish that Plaintiffs are a (1) buyer; (2) transferee; or (3) person entitled to enforce the warranty. The parties do not dispute that Plaintiffs are not "buyers" and thus cannot satisfy the first prong of the "consumer" definition. Consequently, the Court focuses on the two remaining categories.

### I. Consumer

#### A. *Transferee*

Plaintiffs contend the Carrera was transferred to them during the duration of the warranty when, pursuant to paragraph 12 of the lease, PFS assigned its rights in Porsche's written warranty to Plaintiffs. Their argument is illogical, though, since the statutory language requires a transfer of the *product*. That PFS may have transferred the warranty to them is irrelevant. Furthermore, in examining the lease provisions, it is clear the Carrera was not transferred to Plaintiffs. Paragraph 13 expressly states "[t]his is a lease. You have no ownership rights in the Vehicle unless and until you exercise your option to purchase the Vehicle, if this Lease contains a purchase option." A transfer in the traditional sense involves a conveyance of title. *See* BLACK'S LAW DICTIONARY 1497 (6th ed. 1990). There is nothing in the Warranty Act to suggest that mere possession of a product is sufficient. Consequently, Plaintiffs cannot invoke the second prong of the "consumer test."

#### B. *Person Entitled to Enforce the Warranty*

Plaintiffs claim they are persons entitled by the terms of the warranty to enforce those obligations against the warrantor as evidenced by Porsche's repair of the Carrera through its authorized dealers, and the fact that Porsche has never refused them coverage under the warranty. The Court agrees. In

paragraph 12 of the lease, PFS assigned all of its warranty rights to Plaintiffs. As such, even as lessees, Plaintiffs became entitled to assert rights to the warranty. They therefore qualify as "persons entitled to enforce the warranty." However, the Court's analysis cannot end yet, since the Warranty Act only allows enforcement of an implied or written warranty as defined by the Act.

## II. Written Warranty

The Act defines a written warranty as:

(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C § 2301(6). To qualify as an enforceable written warranty for purposes of the Warranty Act, a writing must satisfy not only the requirements of (A) or (B), but also the final clause. In other words, the writing must have been made "in connection with a sale by a supplier," and be "part of the basis of the bargain between a supplier and a buyer for purposes other than resale." *Id.*

*A.    Sale*

The parties argue at length about whether Plaintiffs' lease here can constitute a "sale" as that term is used in the Warranty Act. As far as the Court can tell, this is an issue of first impression in this Circuit. However, several other courts have weighed in on the matter.

Earlier this year, in *DiCintio v. DaimlerChrysler Corp.*, 768 N.E.2d 1121, 1125 (N.Y. 2002), the New York Court of Appeals (its highest state court), held that the Warranty Act does not apply to typical consumer automobile leases. DiCintio involved a 36 month lease of a Jeep Grand Cherokee, with an option to purchase at lease end for $20,561. In reaching that decision, the *DiCintio* court emphasized that

the Warranty Act's language was a language of sales. *Id.* at 1124. The court further reasoned that the lessee enjoyed a different bundle of rights than a buyer, could always have chosen not to buy, and paid less than a buyer who opts for a monthly payment plan. *Id.* at 1125. *DiCintio* expanded on a Florida appellate court holding that the Warranty Act provisions did not apply to a pure automobile lease that offered no purchase option because leases and sales give rise to very different legal obligations. *Sellers v. Frank Griffin AMC Jeep, Inc.*, 526 So.2d 147, 156 (Fla. App. 1st Dist. 1988). In similar cases involving a lease/service contract for an alarm system, other courts likewise concluded that the Warranty Act was inapplicable. *See Corral v. Rollins Protective Services Co.*, 732 P.2d 1260, 1267 (Kan. 1987) (agreement had none of the characteristics of a sale and thus was not subject to the terms of the Magnuson-Moss Warranty Act); *D.L. Lee & Sons, Inc. v ADT Security Systems*, 916 F. Supp 1571, 1580 (S.D. Ga. 1995) ("there must be an identifiable purchase and sale before the provisions of the Magnuson-Moss Act apply"). *But see Freeman v. Hubco Leasing*, 324 S.E.2d 462, 467-68 (Ga. 1985) (holding that as a matter of Georgia law a so-called lease is actually a sale when it conveys ownership and obligates the lessee to 48 monthly payments and a final lump sum); *Henderson v. Benson-Hartman Motors, Inc.*, 41 U.C.C. Rep. Serv. 782, 33 Pa. D. & C.3d 6, 26 (1983) (lease with most of the characteristics of a sale could be enforced under the Warranty Act if the Pennsylvania Uniform Commercial Code ("UCC") treated the lease as a sale).

Plaintiffs attempt to distinguish *DiCintio* by arguing, among other things, that the sale contemplated by the Warranty Act is not limited to transactions between the consumer and the warrantor. Indeed, the Warranty Act covers any written warranty made "in connection with the sale of a consumer product by a supplier to a buyer." Consequently, Plaintiffs contend, the sale of the Carrera from Westmont to PFS, prior to or contemporaneous with the lease transaction, is sufficient. Whether that assertion is correct is not a question this Court must decide, however, because assuming the Westmont-PFS sale satisfies subsections (A) and (B) of the written warranty definition, Plaintiffs ultimately falter on the second part of the test.

*B.     Buyer for Purposes Other than Resale*

Plaintiffs argue that PFS purchased the Carrera from Westmont in order to lease it to Plaintiffs, and therefore PFS was not a buyer for resale purposes. The *DiCintio* court thoroughly addressed and rejected the same argument, explaining that even though an automobile lessor may "collect rent before disposing" of its vehicle, "ultimate resale is presumably an intrinsic part of its plan when it takes title to a vehicle." *DiCintio*, 768 N.E.2d at 1127. In fact, provisions of Plaintiffs' lease here support the presumption that PFS ultimately intended to resell the Carrera to Plaintiffs or someone else. Paragraphs 17(A) and (B) grants Plaintiffs an option to purchase the vehicle at lease end or any other time during the term of the lease. Furthermore, paragraph 21(B) requires Plaintiffs, in the event of default, to reimburse PFS for "reasonable expenses, if any, incurred as a direct result of retaking the Vehicle, holding it, preparing it for sale, and selling it." It is therefore disingenuous for Plaintiffs to suggest that PFS did not purchase the Carrera for resale purposes merely because its immediate intent was to lease the vehicle before ultimately selling it. Accepting all facts in the Complaint as true, the Court finds Plaintiffs have not identified a written warranty as defined by the Warranty Act. To maintain this action under the Warranty Act, then, Plaintiffs must sufficiently plead the existence of an implied warranty.

### III. Implied Warranty

For purposes of the Warranty Act, an implied warranty is defined as "arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." 15 U.S.C 2301(7). Once again, the Court is confronted with the tricky issue of whether the requisite sale took place here. Because this issue arises on a motion to dismiss, and the Complaint does allege that Westmont sold the Carrera to PFS, the Court assumes there was indeed a sale. Thus the Court turns to state law – the parties agree Illinois law governs this analysis – to determine if an implied warranty arises in this case.

The seminal Illinois Supreme Court case to be considered is *Szajna v. General Motors Corp.*, 503 N.E.2d 760 (Ill. 1987). The court there began its discussion on this matter by noting that implied warranty claims arising under the Illinois Uniform Commercial Code ordinarily require privity between a claimant and warrantor if the claimant seeks to recover economic loss due to the warrantor's breach of an implied warranty. *Id.* at 740 (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982). Nevertheless, the court adopted the rule that a nonprivity "consumer" should be permitted to maintain an action on an implied warranty against the warrantor where a Magnuson-Moss written warranty had been given. *Szajna*, 503 N.E. 2d at 769. *See also Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028 (Ill. 1988) (reiterating and explaining the holding of *Szajna*).

Neither *Szajna* nor *Rothe* helps Plaintiffs, though, since the Court has already concluded they did not have a written warranty covered by the Warranty Act. Additionally, although this Court must follow the Illinois courts' construction of Illinois law, *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 442 (7th Cir. 1994), it is not bound by their construction of federal law, *RAR, Inc. v. Turner Diesel, Ltd*, 107 F.3d 1272, 1276 (7th Cir. 1997). Indeed, several federal judges in this district have noted that they are not bound by the interpretations of the Warranty Act, a federal statute, put forth by *Szajna* and *Rothe*, state courts, and thus rejected the notion that the Warranty Act can create implied warranties that would not have existed under state privity law. *Kowalke v. Bernard Chevrolet, Inc.*, No. 99-C7980, 2000 WL 656660, at *5 (N.D. Ill. March 23, 2000) (Kocoras, J.); *Jones v. Fleetwood Motor Homes*, No. 98-C3061, 1999 WL 999784, at * 2 (N.D. Ill. Oct. 29, 1999) (Hart, J.); *Soldinger v. Aston Martin*, No. 97-C7792, 1999 WL 756174, at *6-10 (N.D. Ill Sep. 13, 1999) (Pallmeyer, J.). While the Seventh Circuit has not reached this issue, the Second Circuit has likewise concluded that if state law requires privity for UCC implied warranty claims, then the same rule must be applied for Magnuson-Moss implied warranty claims in that state. *See Abrahams v. Volkswagen of Am.*, 795 F.2d 238, 247-48 (2d Cir. 1986).

Porsche as the manufacturer of the Carrera is not a party to Plaintiffs' lease and thus no

contractual privity exists. *See Rothe*, 518 N.E.2d at 1029-30. Because Illinois law explicitly holds that the lack of contractual privity dooms recovery under the UCC for a theory of breach of implied warranty, *id.* at 1029, no implied warranty exists under the Warranty Act.

## CONCLUSION

Because Plaintiffs cannot establish the existence of a written or implied warranty as defined by the Warranty Act, they do not qualify as "consumers." As such, they have failed to state a claim for relief under the Warranty Act. Counts I, II and III of their Complaint therefore must be dismissed. Since their only remaining claim in the Complaint arises under state law, and the Court declines to exercise supplemental jurisdiction, Count IV is remanded to the Circuit Court of Cook County, Illinois.

**IT IS SO ORDERED.**

_____
WILLIAM J. HIBBLER, DISTRICT JUDGE

DATED: September 25, 2002